No. 16,837.

WHITE *v*. THE PEOPLE.
(249 P. [2d] 823)

Decided October 6, 1952.

Messrs. DICKERSON, MORRISSEY & ZARLENGO, Messrs. ROGERS & WINNER, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. NORMAN H. COMSTOCK, Assistant, for the people.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

SALLY WHITE, plaintiff in error here and defendant

below, was convicted of a violation of our confidence game statute (section 222, chapter 48, '35 C.S.A.) and sentenced to a term in the penitentiary. She is here by writ of error, seeking a reversal of the judgment.

The record discloses that on the evening of September 20, 1951, defendant first contacted the wife of one Virgil A. Van Dyke, the operator of a motel in Grand Junction, Colorado, and later the husband himself, telling them that she was on her way from California to Denver, Colorado, for the purpose of seeing her husband, a wounded Korean veteran, hoping to take him to their home in California. She stated that at Price, Utah, her automobile had broken down, and after the payment for repairs she did not have enough money left to make the trip to Denver. She asked Van Dyke, the complaining witness, to loan her $20.00 on a watch, stating at that time that "It was a good watch, well worth that." She gave Van Dyke her name as Mrs. James Wilson, her address as 7930 Fountain, Hollywood, California, and, after receiving the loan of $20.00, stated that she expected to return on the following Saturday, made a tentative reservation for accommodations for that night, and "when they came back, they would stop and get her watch and give us the twenty dollars."

Van Dyke's testimony with reference to the transaction was as follows: "Q. Did the offering of this watch as security, did that have any effect upon your believing her? A. I didn't say that it did, no. Q. Did it enter into the picture? A. Oh, I suppose the same as anyone else, you can take it just as a little security that they would maybe come back. Q. Did that cause you to think that she would come back? A. As I say, her story was good enough, I thought, to let her have the twenty dollars. Q. Did that watch enter into the story? A. I wouldn't say that it did. Q. Did the offering of the watch and the watch itself have any effect upon your belief? A. It made me believe she would come back, yes."

On cross examination the witness was asked: "Q. You and your wife looked at the watch and examined it, didn't you? A. Oh, yeah, sure. Q. Did you think the watch was worth twenty bucks or not? A. I don't know what watches are worth. I don't know by just looking at it. * * * Q. You took the watch for security? A. Thinking they would come back and pick it up."

The witness testified that after defendant had been arrested, incarcerated and then released, she promptly repaid the $20.00 loan, and the watch was then delivered to her.

Another motel operator testified that she had loaned defendant $15.00 on a watch and that prior to the loan defendant had told her practically the same story as was related to Van Dyke before he made a loan.

There was evidence that a box with a label "C.O.D. $335" was found in an automobile driven by defendant's male companion which contained fifty watches. What defendant's male companion paid for the watches contained in the box is undisclosed. The box was delivered to defendant's male companion at Montrose, Colorado, and contained watches somewhat similar to the two watches upon which defendant had secured loans.

Defendant testified that she was married; her name was Mrs. White; she was separated from her husband; at the invitation of her male companion she and he were driving from California to Indiana, where they expected to visit her companion's parents, and she, being unemployed, there hoped to secure employment. She admitted that she had lied about her name, the car accident, her sick husband in Denver, and the necessity for money. She admitted that after she had secured the loan on the two watches mentioned she had in her possession approximately $145.00, part of which she had concealed from her male companion. She also testified that it was her intention to secure funds from a friend of hers in California, to whom she made an unsuccessful attempt to communicate; that if she had received this money,

it was her intended purpose to repay the loans and redeem the watches.

The only testimony as to the value of the watch involved here was that of a jeweler who had been in that business for a period of about seventeen years. He testified that he had examined the watch in question, and the retail value of this watch was $29.75 but that he had known of this identical watch being sold for as much as $71.50.

There are three assignments of error, and the one attacking the sufficiency of the evidence to support the conviction is the only one we deem it necessary to consider.

The statute in question is, as we have said, section 222, chapter 48, '35 C.S.A., which reads in part as follows: "Every person who shall obtain, or attempt to obtain, from any other person or persons, any money or property by means of or by use of brace faro, or any false or bogus checks, or by any other means, instrument or device, commonly called confidence games, shall be liable to indictment, and on conviction shall be punished by imprisonment in the penitentiary for any term not less than one year, nor more than twenty years. * * * "

We have been required, on many occasions, to consider the above section. We deem it unnecessary to review our decisions for since the earliest case to our last pronouncement we have consistently followed the law as announced in the following from *People v. Dolph,* 124 Colo. 553, 239 P. (2d) 312: "There can be no doubt concerning the law in this jurisdiction as to whether a bogus or false instrument, token, or device, is essential to establish the guilt of an accused upon a charge based on the confidence game statute. We have held repeatedly that mere words are not sufficient to warrant a conviction under that statute. Typical of the expression of this court upon the point is the following language from our opinion in *Wheeler v. People,* 49 Colo. 402, 113 Pac. 312: 'To constitute the offense, the money or prop-

erty must have been obtained, or the attempt thereto made, by some false or bogus means, token, symbol or device, as distinguished from words, however false and fraudulent.' This rule has been recognized and applied under varying circumstances in the following cases decided by this court." (Citing cases.)

■ Here the watch itself was not bogus, the uncontradicted evidence is that its retail value was $29.75; the complaining witness did not repose confidence in defendant because of her false statements to him; at any rate he examined the security offered by defendant and concluded it was sufficient to justify the loan. So far as the record here discloses, it was sympathy rather than confidence that motivated the prosecuting witness in this transaction. We conclude that the evidence here was wholly insufficient to support the charge, and the jury should have been so instructed.

The judgment is reversed and the cause remanded with instructions to dismiss.

MR. JUSTICE KNAUSS does not participate.